UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



**FILED**
JUN 10 2015

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| KEVIN WRIGHT, Acting Chairman, Lower Brule Sioux Tribal Council Member; SONNY ZIEGLER, Lower Brule Sioux Tribal Council Member; and DESIREE LaROCHE, Lower Brule Sioux Tribal Council Member, | \* \* \* \* \* \* \* \* | CIV 15-4097 |
| Plaintiffs, | \* \* | ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY |
| vs. | \* \* | RESTRAINING ORDER |
| ORVILLE (RED) LANGDEAU, Lower Brule Sioux Tribal Council Member; JOHN McCAULEY, SR., Lower Brule Sioux Tribal Council Member; SALLY JEWELL, Secretary of United States Department of the Interior; JAMES TWO BULLS, Bureau of Indian Affairs Lower Brule Agency Superintendent, in his official capacity; and TIM LAPOINTE, Aberdeen Area BIA Director, in his official capacity, | \* \* \* \* \* \* \* \* \* \* \* \* | |
| Defemdants. | \* \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Lower Brule Sioux Tribal Council Members, Kevin Wright, Sonny Ziegler, and Desiree LaRoche (Plaintiffs), move this Court for a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure restraining the Tribal Court from holding separate jurisdictional and evidentiary hearings on June 11, 2015. For the following reasons, the motion is denied.

## BACKGROUND

In December of 2014, a tribal council meeting was held wherein Plaintiffs were attempting to ascertain the whereabouts of roughly $24 million in federal funding and how it could be that the

current chief tribal judge was seated after allegedly being defeated during the election process. Plaintiffs allege that Defendants McCauley and Langdeau departed from the council meeting when such issues arose, refusing to answer. The Council was thereafter recessed and the current conflict arose.

Defendants herein filed an action in tribal court on May 1, 2015 in order to remove Plaintiffs from their positions as tribal council members. The tribal court action was allegedly brought on May 1, 2015 by Defendants (tribal court plaintiffs) in order "to stop the acting tribal chairman Kevin Wright from trying to inquiry (sic) or find out about the missing or unaccountable federal funds in amount over (sic) 24 million dollars." Complaint at 2, *Wright v. Langdeau*, (D.S.D. 2015) (CIV. 15-4097). It is alleged that Defendants' attorney at the tribal level "who was mandated to provide legal services to the whole six member tribal council including [Plaintffs]" instead indicated in her court filings that she represented the "Tribe" without specifying any further. Brief for Plaintiffs at 2, *Wright v. Langdeau*, CIV-15-4097 (D.S.D. June 4, 2015). To rectify the perceived defect, presiding tribal judge, B.J. Jones, allowed Defendants to intervene as Plaintiffs in the tribal action. Plaintiffs in the present action further allege that Defendants in the present action have failed to remit court fees in accordance with tribal court procedure.

Plaintiffs allege among other things that the issue revolving around the whereabouts of the federal funds was raised in both a petition for extraordinary writ of mandamus requesting the tribal appellate court judges to order Defendants to account for the funds and an interlocutory appeal arguing that the tribal court special judge abused his discretion by granting a request by Defendants for a TRO. The tribal court issued and then continued a Temporary Restraining Order against the Defendants in the tribal court action. Those Defendants are now the Plaintiffs in this federal court action.

Shortly after the May 1 tribal court lawsuit was initiated, Plaintiffs in this action filed a petition for extraordinary writ of mandamus and interlocutory appeal with the Lower Brule tribal appellate court. Plaintiff Wright received a remand order from the appellate court on May 22, 2015. On

2

remand, the tribal court is instructed to examine the jurisdictional basis of the suit "in light of the Court's dismissal of the Tribe as a proper Plaintiff in the original case." *Langdeau v. Wright*, Lower Brule Sioux Tribal Court, CIV-14-12-0119 (May 27, 2015). This federal court case was then filed on May 27, 2014.

In the present action, Plaintiffs are alleging Defendants Landeau and McCauley, Sr. allowed $24 million in federal funds to remain "missing or unaccountable." Plaintiffs assert this Court has jurisdiction pursuant to 28 U.S.C. § 1331, the Administrative Procedure Act, and 28 U.S.C. § 1367. The Complaint contains three claims for relief: (1) an accounting from the Defendants regarding the $24 million in federal funds, (2) an order from the Court to compel Defendants James Two Bulls and Tim LaPointe "to enforce their fiduciary duties to hold . . . [D]efendant[s] [] Langdeau and [] McCauley [] to account for the missing federal funds," and (3) an order from the Court compelling Defendants Langdeau and McCauley to "open[] up the Lower Brule Tribal farm operations' (sic) financial records and all other documents that comprise the farms (sic) operation . . ." Currently before the Court is Plaintiffs' motion for a temporary restraining order preventing the tribal court from holding jurisdictional and evidentiary hearings on June 11, 2015. It appears to the Court that Defendants have not been notified of the restraining order request. Plaintiffs maintain that if the June 11 proceedings are allowed, it will result in their removal from tribal council as reprisal for their inquiry into the federal funding.

## DISCUSSION

Rule 65(b) provides in relevant part

**(b) Temporary Restraining Order**
**(1) Issuing Without Notice.** The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
**(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
**(B)** the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed.R.CIV.P.65(B).

3

Based on the record before the Court, Plaintiffs seek a TRO without first giving notice to Defendants. Additionally, there is no indication from the submitted filings that Plaintiffs made any efforts to notify Defendants. The filings are lacking any explanation as to why notifying Defendants should not be required. Based on that finding, alone, the Court denies Plaintiff's requested TRO. In addition, the record lacks sufficient information as to the Court's jurisdiction on two grounds.

First, federal court intervention at this point in the tribal proceedings would cut short the tribal court's right to fully adjudicate issues before it. The Supreme Court has "repeatedly recognized the Federal Government's longstanding policy of encouraging tribal self-government." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14 (1987). The policy often articulated by the Supreme Court is rooted in the notion "that Indian tribes retain 'attributes of sovereignty over both their members and their territory,' *United States v. Mazurie*, 419 U.S. 544, 557 (1975), to the extent that sovereignty has not been withdrawn by federal statute or treaty." *LaPlante*, 480 U.S. at 14. The *LaPlante* Court also recognized that federal courts' intervention into reservation affairs may serve only to impair the tribal courts' authority. *Id.* at 15. In *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 865 (1985), the Supreme Court noted any promotion of tribal self-government would be futile if the tribal courts were not given "the first opportunity to evaluate the factual and legal bases for the challenge" to its jurisdiction. The *National Farmers* Court went on to observe that when tribal courts are given the "full opportunity" to adjudicate issues before it allows the court to "rectify any errors." *Id.* at 857.

In the instant case, as well as the tribal court action, the controversy appears to primarily involve tribal law. Plaintiffs, as Defendants in the tribal action, are alleged to have violated the tribal constitution. The tribal court is better situated to interpret the Tribe's own laws. The tribal court should have a full opportunity to review its own jurisdiction and hear the evidence presented, which is what the June 11 hearing will accomplish. Ultimately, the information provided is insufficient to convince this Court that the tribal court should not be allowed to determine its own jurisdiction and rule upon the issues presented. Once the tribal court proceedings are completed, including tribal court appellate review, if any, there will be an exhaustion of tribal court remedies.

Second, it has been well established that federal courts are not to engage in tribal internal affairs. "Tribal court subject matter jurisdiction over tribal members is first and foremost a matter of internal tribal law." KENNETH BOBROFF, ET AL., COHEN'S HANDBOOK OF FEDERAL INDIAN LAW 599 (Nell Jessup Newton, Lexis Nexis 2005) (1941). *See Different Horse v. Salazar*, No. CIV 09-4049, 2011 WL 3422842, at *2 (D.S.D. Aug. 4, 2011) (quoting Patrice H. Kunesh, *Tribal Self-Determination in the Age of Scarcity*, 54 S.D. L. Rev. 398, 409 (2009)) ("[Indian tribes] 'possess inherent rights over internal tribal affairs to make substantive laws governing their members and their territory.'"). A tribe's power over its members and territory, therefore, is plenary and exclusive, "subject only to limitations imposed by federal law." *Cohen, supra,* at 210. Tribal sovereignty and self-government are not novel concepts. "For most of this nation's history Congress has recognized that Indian tribes have a distinct status, even during those periods in which congressional policy encouraged assimilation of tribal members and termination of the special relationship between tribes and the federal government." *Id.* Moreover, since the 1960s, Congress has displayed strong, consistent support for tribal sovereignty. *Id.* Specific to tribal court systems, tribal judiciaries were the most underdeveloped component of tribal governments until the beginning of the 21st century. By that time, "more than 140 tribes had tribal courts, actively engaged in dispute resolution and interpretation of tribal laws." *Id.* at 265. Today, "[m]any [tribal courts] emulate, in varying degrees, the Anglo-American system, while employing some of their own traditional procedures and sanctions; others are essentially traditional." *Id.* at 217. In sum, Congressional attitude relative to Indian tribes "recognize[s] . . . [tribes] as modern governments dealing with modern problems." *Id.* at 211.

*Different Horse* is instructive here. In *Different Horse*, an action was brought against the Secretary of the Interior for distribution of monies awarded to the Sioux Nation stemming from what was determined to be an unconstitutional taking of the Black Hills in western South Dakota. The *Different Horse* Court ultimately held that the Sioux Nation, which was not a party to the action, was an indispensable party and the action could not proceed in its absence. In ruling to dismiss the action, it was held in *Different Horse* that the suit centered on

> an internal tribal matter. Plaintiffs wish to receive their portion of the funds for the wrongful taking of the Black Hills and the lands ceded by the Treaty of Laramie of 1868. Plaintiffs have a position contrary to that of their tribal governing bodies. That

5

> difference of position is an internal tribal matter into which the federal courts cannot intrude. The fact that this is an internal tribal matter not subject to federal court intervention is another recognition of tribal sovereignty. If a tribe changes its position, that is for the tribe to decide.

*Different Horse*, 2011 WL 3422842, at *4.

Here, just as in *Different Horse*, the record establishes that the federal action brought by Plaintiffs represents a position different than that of the tribal council. Plaintiffs here brought this action concerning perceived deficiencies in tribal procedure. As was found in *Different Horse* federal courts are cautioned against, if not proscribed from, adjudicating issues that are internal tribal affairs. As discussed, Indian tribes, as sovereign, modern governments, are entitled to adjudicate contests between tribal members. Absent explicit Congressional mandate, Indian tribes retain inherent sovereign authority over its members and its internal affairs. The record provides the Court with insufficient grounds to warrant a Temporary Restraining Order (TRO). It remains to be seen whether or not there is jurisdiction in this Court for any of the claims even after an exhaustion of tribal court proceedings and remedies. Accordingly,

> IT IS ORDERED that Plaintiffs' Motion for Temporary Restraining Order, Doc. 12, is denied.

Dated this 10th day of June, 2015.

BY THE COURT:

*[signature]*

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
By *[signature]*
    Deputy

6