**FILED**

JAN 2 5 2016

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| KEVIN WRIGHT, acting Chairman, Lower Brule Sioux Tribal Council Member; SONNY ZIEGLER, Lower Brule Sioux Tribal Council Member; and DESIREE LAROCHE, Lower Brule Sioux Tribal Council Member, | * * * * * * * | CIV 15-4097 |
| Plaintiffs, | * * | |
| v. | * * | MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTFFS' COMPLAINT |
| ORVILLE (RED) LANGDEAU, Lower Brule Sioux Tribal Council Member; JOHN MCCAULEY, SR., Lower Brule Sioux Tribal Council Member; SALLY JEWELL, Secretary of United States Department of the Interior, JAMES TWO BULLS, Bureau of Indian Affairs Lower Brule Agency Superintendent, in his official capacity, and TIM LAPOINTE, Aberdeen Area BIA Director, in his official capacity | * * * * * * * * * * * * | |
| Defendants. | * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Defendants, two Lower Brule Sioux Tribal Council members (tribal Defendants) and three United States government officials (government Defendants) (all Defendants collectively, "Defendants"), filed motions to dismiss Plaintiffs' Complaint pursuant to Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule of Civil Procedure 12(b)(6) for failure to state a claim, Doc. 15 and 18. For the following reasons, the motions are granted.

## BACKGROUND

In December of 2014, the Lower Brule Sioux Tribal Council held a meeting wherein Plaintiffs attempted to ascertain the whereabouts of roughly $24 million in federal funding and

how it could be that the current chief tribal judge was seated after allegedly being defeated during the election process. Plaintiffs allege that Defendants McCauley and Langdeau departed from the council meeting when such issues arose, refusing to answer. The Council was thereafter recessed and the current conflict arose.

Defendants herein (tribal court Plaintiffs) thereafter filed an action in tribal court on May 1, 2015 in order to remove Plaintiffs herein (tribal court Defendants) from their positions as tribal council members. The tribal court action was allegedly brought by Defendants in order "to stop the acting tribal chairman Kevin Wright from trying to inquiry (sic) or find out about the missing or unaccountable federal funds in amount over 24 million dollars." Complaint at 2. In addition, it is alleged that the tribal Defendants' attorney was supposed to provide legal services to each member of the tribal council, including Plaintiffs, but instead indicated in her court filings that she represented the "Tribe" without specifying any further. To rectify the perceived defect, presiding Tribal Judge, B.J. Jones, allowed the tribal Defendants herein to intervene as Plaintiffs in the tribal action. Plaintiffs herein further allege that the tribal Defendants have failed to remit court fees in accordance with tribal court procedure.

Plaintiffs allege that the issue revolving around the whereabouts of the federal funds was raised in both a petition for extraordinary writ of mandamus requesting the tribal appellate court judges to order Defendants to account for the funds and an interlocutory appeal arguing that the tribal court special judge abused his discretion by granting a request by the tribal Defendants for a TRO. According to Plaintiffs, the TRO was issued to prevent them from pursuing an affirmative defense of determining what happened to the federal funds and has an allegedly indefinite termination date. It is alleged in the Complaint that on February 16, 2015 special Tribal Judge, B.J. Jones, filed a judgment and order wherein it was determined that Plaintiffs had attempted to remove the tribal Defendants in violation of the tribal constitution.

Shortly after the May 1st lawsuit was initiated, Plaintiffs filed a petition for extraordinary writ of mandamus and interlocutory appeal with the Lower Brule tribal appellate court. Plaintiff Wright received a remand order from the appellate court on May 22, 2015. On remand, the tribal court was instructed to examine the jurisdictional basis of the suit "in light of the Court's dismissal of the Tribe as a proper Plaintiff in the original case." *Langdeau v. Wright*, Lower

Brule Sioux Tribal Court, CIV-14-12-0119 (May 27, 2015). This action followed on May 27, 2015.[1]

In this federal action, Plaintiffs are alleging tribal Defendants Landeau and McCauley, Sr. allowed $24 million in federal funds to remain "missing or unaccountable." Plaintiffs assert this Court has jurisdiction pursuant to 28 U.S.C. § 1331, the Administrative Procedure Act (APA), and 28 U.S.C. § 1367. The Complaint contains three claims for relief: (1) an accounting from the Defendants regarding the $24 million in federal funds, (2) an order from the Court to compel government Defendants James Two Bulls and Tim LaPointe "to enforce their fiduciary duties to hold . . . [D]efendant[s] [] Langdeau and [] McCauley [] to account for the missing federal funds," and (3) an order from the Court compelling tribal Defendants Langdeau and McCauley to "open[] up the Lower Brule Tribal farm operations' financial records and all other documents that comprise the farms (sic) operation . . ." Currently before the Court are Defendants' motions to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction or, alternatively, failure to state a claim.

## STANDARD OF REVIEW

"Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and statutes enacted by Congress pursuant thereto." *Crow Creek Sioux Tribe v. Bureau of Indian Affairs*, 463 F. Supp. 2d 964. 966 (D.S.D. 2006). "'The party claiming federal subject matter jurisdiction has the burden of proving it exists.'" *M.J. Farms, Ltd. v. U.S. Fish and Wildlife Service*, 593 F. Supp. 2d 907, 910 (W.D. La. 2008) (quoting *People's Nat'l Bank v. Office of Comptroller of Currency*, 362 F.3d 333, 336 (5th Cir. 2004)). "A party challenging subject matter jurisdiction under Rule 12(b)(1) must attack either the facial or factual basis for jurisdiction." *Middlebrooks v. U.S.*, 8 F. Supp. 3d 1169, 1173 (D.S.D. 2014) (citing *Osborn v. U.S.*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990)). Under a facial challenge, the reviewing court examines the complaint to determine if the plaintiff has satisfactorily alleged grounds for subject matter jurisdiction. *Id.* The nonmoving party is afforded the same protections she would receive were she defending against a Rule 12(b)(6) motion. *Id.* A factual challenge, on the other hand, tests the factual basis the nonmoving party has asserted for

---

[1] On the same day as filing the federal action, Plaintiffs also requested a TRO from this Court ordering the tribal court proceedings restrained. The Court denied the TRO request due to Plaintiffs having failed to exhaust tribal court remedies and due to the issues presented centering primarily on an intra-tribal dispute. Doc. 16. *See* Part II., *infra*.

subject matter jurisdiction. Matters outside of the pleadings may be considered by the reviewing court and the nonmoving party is afforded no Rule 12(b)(6)-type protections.[2] *Id.*

Under Rule 12(b)(6), the factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), cited in *Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief. *Id.* (internal citations omitted); *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). Although a plaintiff in defending a motion under Rule 12(b)(6) need not provide specific facts in support of its allegations, *see Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam), it must include sufficient factual information to provide the grounds on which her claim rests, and to raise a right to relief above a speculative level. *Twombly*, 550 U.S. at 555–556 & n. 3. Although Federal Rule of Civil Procedure 8 may not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim must have facial plausibility to survive a motion to dismiss. *Id.* Determining whether a claim has facial plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

### I. Sovereign Immunity

"Under the doctrine of sovereign immunity, the United States cannot be sued without its consent." *Middlebrooks*, 8 F. Supp. 3d at 1173 (citing *U.S. v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)). "The plaintiff has the burden of showing both a waiver of sovereign immunity and a grant of subject matter jurisdiction." *Id.* (citing *V S Ltd. P'ship v.*

---

[2] Defendants do not specify whether their Rule 12(b)(1) motions to dismiss are a facial or factual challenge. Nothing in either brief, however, challenges Plaintiffs' facts as alleged in the Complaint. Instead, the United States focuses its arguments on the lack of a basis for subject matter jurisdiction. Tribal defendants focus their arguments on deference to tribal court proceedings. That being the case, the Court will treat the motion as a facial attack under Rule 12(b)(1) and will grant to Plaintiffs the protections afforded to them under Rule 12(b)(6).

*Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000)). When the United States consents to suit, the boundaries of the court's jurisdiction are set by the terms of the sovereign immunity waiver. *Id.* (quoting *U.S. v. Mottaz*, 476 U.S. 834, 841, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986)). Plaintiffs did not respond to the United States' motion to dismiss. The Complaint, however, alleges three separate grounds for jurisdiction: (1) 28 U.S.C. § 1331, (2) the APA, and (3) 28 U.S.C. § 1367(a). The Court will therefore review the three claimed bases in order to determine if any operate as a waiver of sovereign immunity and grant of subject matter jurisdiction.

### A. Arising Under Jurisdiction (28 U.S.C. § 1331)

While it is recognized that federal district courts have general subject matter jurisdiction over actions instituted by federal officers, no analogous grant of jurisdiction exists over actions brought against a federal officer or agency. 14 Charles Alan Wright & Charles H. Koch, Jr., FEDERAL PRACTICE AND PROCEDURE § 3655 (3d. ed. 2014). *See Whittle v. U.S.*, 7 F.3d 1259, 1262 (6th Cir. 1993) ("The federal question jurisdictional statute is not a general waiver of sovereign immunity; it merely establishes a subject matter that is within the competence of federal courts to entertain."); *Toledo v. Jackson*, 485 F.3d 836, 838 (6th Cir. 2007) (holding that § 1331 did not independently waive the government's sovereign immunity and plaintiffs had to go further than merely invoking the general jurisdiction statute); *Rosebud Sioux Tribe v. U.S., Bureau of Indian Affairs*, 714 F. Supp. 1546, 1552 (D.S.D. 1989) ("Section 1331 sets forth the general federal question jurisdiction of federal district courts, but is not a general waiver of sovereign immunity allowing suits against the government."). Here, Plaintiffs seek to proceed in the proscribed manner. By challenging the Defendants' actions solely under 28 U.S.C. § 1331, Plaintiffs are attempting to use a basis for jurisdiction that does not apply. "[A] person attempting to sue a federal agency or officer must demonstrate that the claim being asserted is covered by a specific statutory waiver, or that in effect the proceeding is not a suit against the United States but rather is an action against the officer" Wright, *supra*, at § 3655. Plaintiffs have failed to do so as the government Defendants have been sued in their official capacities. In addition, the Court agrees with the United States that the general trust relationship between the federal government and Indian tribes is insufficient, by itself, to support this cause of action. *See U.S. v. Navajo Nation*, 537 U.S. 488, 506, 123 S.Ct. 1079, 155 L.Ed.2d 60 (2003) (quoting *U.S. v. Mitchell*, 463 U.S. 206, 225, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)) ("Although 'the

undisputed existence of a general trust relationship between the United States and the Indian people' can 'reinforc[e]' the conclusion that the relevant statute or regulation imposes fiduciary duties, that relationship alone is insufficient to support jurisdiction under [laws similar to the APA]."[3]) (first alteration in original). Thus, 28 U.S.C. § 1331 does not properly serve as Plaintiffs' basis for subject matter jurisdiction.

## B. Administrative Procedure Act

In the Complaint, Plaintiffs also allege that the APA forms a basis for subject matter jurisdiction.[4] "The APA waives sovereign immunity for actions against the United States for review of administrative actions that do not seek money damages and provides for judicial review in the federal district courts." *Middlebrooks*, 8 F. Supp. 3d at 1174 (citing *Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 480 F.3d 1116, 1122 (Fed. Cir. 2007)). "The federal APA[,however,] does not confer jurisdiction." Wright, *supra*, at § 8295. *See Califano v. Sanders*, 430 U.S. 99, 105, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Even actions brought under the APA must be based on independent grounds of federal jurisdiction. Wright, *supra*, at § 8295. Such independent grounds may be in the form of a federal court's general jurisdiction under 28 U.S.C. § 1331. *Id. See Robbins v. Reagan*, 780 F.2d 37, 42 (D.C. Cir. 1985); *Preferred Risk Mut. Ins. Co. v. U.S. (Preferred Risk)*, 86 F.3d 789, 792 n. 2 (8th Cir. 1996) ("The APA is not an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action. *see Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Given that the Lanham Act's applicability to the federal government must be

---

[3] The law similar to the APA in *Navajo Nation* was the Indian Tucker Act. Under the Act, "'[i]f a claim falls within the terms of the [Indian] Tucker Act, the United States has presumptively consented to suit.'" *Navajo Nation*, 537 U.S. at 503 (quoting *Mitchell*, 463 U.S. at 216) (second alteration in original). Similar to the APA, the Indian Tucker Act "is not itself a source of substantive rights." *Id.* (citations omitted). To state a claim under the Act, an Indian litigant "must invoke a rights-creating source of substantive law[.]" *Id.* "Because '[t]he [Indian] Tucker Act itself provides the necessary consent' to suit, however, the rights-creating statute or regulation need not contain 'a second waiver of sovereign immunity.'" *Id.* (quoting *Mitchell*, 463 U.S. at 218-19) (alterations in original).

[4] Section 702 of the APA provides that

[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein denied on the ground that it is against the United States or that the United States is an indispensable party.... Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C § 702.

6

resolved, subject-matter jurisdiction in this case is founded upon 28 U.S.C. § 1331, federal question jurisdiction.").

The APA waives the United States' sovereign immunity in either one of two ways. First, under 5 U.S.C. § 702, (1) the claimant "must identify some agency action," and (2) the claimant "must show that he has suffered a legal wrong or been adversely affected by that action within the meaning of a relevant statute." *Preferred Risk*, 86 F.3d at 792 (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 882-83, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). *See*, *supra*, note 4 and accompanying text. Second, under 5 U.S.C. § 704[5], a federal court may review "a final agency action for which there is no other adequate remedy in a court." *Lujan*, 497 U.S. at 882. *See*, *infra*, note 6 and accompanying text for the definition of "final agency action." In either instance, while the APA waives the United States' sovereign immunity, the claimant must, as discussed above, rely either on a separate statute, 5 U.S.C. § 702, or "final agency action," 5 U.S.C. § 704, for subject matter jurisdiction. Under the 5 U.S.C. § 704 pathway, even when a litigant points to independent jurisdictional bases, i.e., an agency's action, the APA requires that the challenged administrative decision be final.[6] 5 U.S.C. § 704. *See* Wright, *supra*, at § 8397;

---

[5] The section reads, in whole,

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704.

[6] Independently, the APA does not require that a claimant comply with exhaustion doctrine. Exhaustion is required under the APA only when necessitated by an applicable statute or agency regulation. *See Darby v. Cisneros*, 509 U.S. 137, 154, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993) ("[W]here the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review.") (emphasis in original); *Conservation Force v. Salazar*, 919 F. Supp. 2d 85, 89 (D.C. Cir. 2013). Thus, the United States' citation to *Edwards v. Dep't of the Army*, 708 F.2d 1344, 1346 (8th Cir. 1983), and implied suggestion that Plaintiffs must exhaust their administrative remedies before seeking judicial review, United States' Brief in Support of Motion to Dismiss, Doc. 19, at 8, is, respectively, misapplied and rejected by the Court. No statute providing the substantive law has been invoked by Plaintiffs that requires exhaustion of administrative remedies in this case. In fact, as will be discussed in this section of the Memorandum Opinion and Order *infra*, in these circumstances, Plaintiffs are not required to point to a relevant statute, but, instead, final agency action. In any event, because Plaintiffs are claiming subject matter jurisdiction under §§ 1331 and 1367(a), exhaustion will not be discussed as those jurisdictional claims do not require it. Discussion will be confined to the APA's requirement that administrative action be final before judicial review may be sought. What constitutes a "final agency action" is not clearly defined in either statutory code or judicial opinion. Wright, *supra*, § 8295. When interpreting finality for purposes of judicial review, courts should inquire into whether the agency action "implies a definitive act of the agency, action which is binding until and unless it is set aside by a court. It assures that courts will review a closed, discrete, and focused action." *Id.*

*Bennett v. Spear*, 520 U.S. 154, 176, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997); *Middlebrooks*, F. Supp. 3d at 1177.

Here, Plaintiffs fail both tests. As to 5 U.S.C. § 702, "agency action" is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Lujan*, 497 U.S. at 882 (quoting 5 U.S.C. § 551(13)). The Complaint does not specify any affirmative action on the part of the United States. Instead, Plaintiffs seem to suggest that it was the United States' inaction that resulted in the missing finds. Assuming, *arguendo*, that such inaction is sufficient "agency action" under 5 U.S.C. § 702, Plaintiffs fail the second prong of the test by not pointing to a "relevant statute" within the meaning of which they were harmed. Instead, Plaintiffs allege only inaction attributable to the Lower Brule Sioux Tribal Council and several federal officials and point to harm based on these actors' general conduct. As a result, 5 U.S.C. § 702 has no application to Plaintiffs' claims and the United States has not waived its sovereign immunity under 5 U.S.C. § 702 in these circumstances.

"When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'" *Id.* (citing 5 U.S.C. § 704)). Thus, as to 5 U.S.C. § 704, Plaintiffs are not required to allege harm within the meaning of a statute in order to show that the United States waived its sovereign immunity. In place of a statute, Plaintiffs must allege that a final agency action resulted in the harm. Plaintiffs failed to do so. In fact, Plaintiffs have not alleged any agency action, generally, that is said to have violated their rights. Moreover, 5 U.S.C. § 704 requires that "there [be] no other adequate remedy in a court." *Lujan*, *supra*. Here, however, tribal court operates as an "adequate remedy in a court." Therefore, the United States has not waived its sovereign immunity under the APA in this case and the APA, therefore, does not form a basis of subject matter jurisdiction.

## C. Supplemental Jurisdiction (28 U.S.C. § 1367(a))

Plaintiffs also seek to establish this Court's subject matter jurisdiction under the supplemental jurisdiction doctrine. Section 1367(a) reads, in pertinent part, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . ." 28 U.S.C. § 1367(a). Here, before invoking 28 U.S.C. § 1367, Plaintiffs must first establish this Court's original jurisdiction

8

over a claim upon which others, not within the Court's original jurisdiction, may be supplemented. Plaintiffs have not done so. Moreover, Plaintiffs' cause of action contain no state claims or otherwise that this Court's supplemental jurisdiction could carry. Thus, § 1367(a) has no relevance and cannot form the jurisdictional basis for Plaintiffs' federal claims. Because Plaintiffs have not shown that the United States has waived its sovereign immunity in these circumstances, Plaintiffs' federal action as against government Defendants Jewell, Two Bulls, and LaPointe is dismissed for lack of subject matter jurisdiction.

## II. Intra-Tribal Affairs

As to the remaining tribal Defendants, the federal action cannot be maintained for two reasons. First, Plaintiffs have not shown an exhaustion of tribal remedies. "Exhaustion of tribal court remedies [] encourage[s] tribal courts to explain to the parties the precise basis for accepting jurisdiction, and [] also provide[s] other courts with the benefit of their expertise in such matters in the event of further judicial review." *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 857, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). The Supreme Court has "repeatedly recognized the Federal Government's longstanding policy of encouraging tribal self-government." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). The policy often articulated by the Supreme Court is rooted in the notion "that Indian tribes retain 'attributes of sovereignty over both their members and their territory,' *U.S. v. Mazurie*, 419 U.S. 544, 557, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975), to the extent that sovereignty has not been withdrawn by federal statute or treaty." *LaPlante*, 480 U.S. at 14. The *LaPlante* Court also recognized that federal courts' intervention into reservation affairs may serve only to impair the tribal courts' authority. *Id.* at 15. In *National Farmers*, the Supreme Court noted any promotion of tribal self-government would be futile if the tribal courts were not given "the first opportunity to evaluate the factual and legal bases for the challenge" to its jurisdiction. 471 U.S. at 865. The *National Farmers* Court went on to observe that tribal courts being given the "full opportunity" to adjudicate issues before it allows the court to "rectify any errors." *Id.* at 857. Further clarifying tribal exhaustion doctrine, two years after the *National Farmers* decision, the *LaPlante* Court held, "At a minimum, exhaustion of tribal remedies means that tribal appellate courts have the opportunity to review the determinations of the lower tribal courts." *LaPlante*, 480 U.S. at 17.

Here, federal court intervention at this point in the tribal action would cut short the tribal court's right to fully adjudicate issues before it. Based on the record, the tribal court proceedings have not yet concluded and there has been no showing made by Plaintiffs that tribal appellate review has begun. Not having opportunity to fully adjudicate the case before it–which includes appellate review–the tribal court retains jurisdiction over the action and this Court's jurisdiction must, therefore, await completion at the tribal level.

Second, it has been well established that federal courts are not to engage in internal tribal affairs. "Tribal court subject matter jurisdiction over tribal members is first and foremost a matter of internal tribal law." KENNETH BOBROFF, ET AL., COHEN'S HANDBOOK OF FEDERAL INDIAN LAW 599 (Nell Jessup Newton, Lexis Nexis 2005) (1941). *See Different Horse v. Salazar*, No. CIV 09-4049, 2011 WL 3422842, at *2 (D.S.D. Aug. 4, 2011) (quoting Patrice H. Kunesh, *Tribal Self-Determination in the Age of Scarcity*, 54 S.D. L. Rev. 398, 409 (2009)) ("[Indian tribes] 'possess inherent rights over internal tribal affairs to make substantive laws governing their members and their territory."). A tribe's power over its members and territory, therefore, is plenary and exclusive, "subject only to limitations imposed by federal law." Bobroff, *supra*, at 210. Tribal sovereignty and self-government are not novel concepts. "For most of this nation's history Congress has recognized that Indian tribes have a distinct status, even during those periods in which congressional policy encouraged assimilation of tribal members and termination of the special relationship between tribes and the federal government." *Id.* Moreover, since the 1960s, Congress has displayed strong, consistent support for tribal sovereignty. *Id.* Specific to tribal court systems, tribal judiciaries were the most underdeveloped component of tribal governments until the beginning of the 21st century. By that time, "more than 140 tribes had tribal courts, actively engaged in dispute resolution and interpretation of tribal laws." *Id.* at 265. Today, "[m]any [tribal courts] emulate, in varying degrees, the Anglo-American system, while employing some of their own traditional procedures and sanctions; others are essentially traditional." *Id.* at 217. In sum, Congressional attitude relative to Indian tribes "recognize[s] . . . [tribes] as modern governments dealing with modern problems." *Id* at 211.

*Different Horse* is instructive here. In *Different Horse*, an action was brought against the Secretary of the Interior for distribution of monies awarded to the Sioux Nation stemming from what was determined to be an unconstitutional taking of the Black Hills in western South

Dakota. The *Different Horse* Court ultimately held that the Sioux Nation, which was not a party to the action, was an indispensable party and the action could not proceed in its absence. In ruling to dismiss the action, it was held in *Different Horse* that the suit centered on

> an internal tribal matter. Plaintiffs wish to receive their portion of the funds for the wrongful taking of the Black Hills and the lands ceded by the Treaty of Laramie of 1868. Plaintiffs have a position contrary to that of their tribal governing bodies. That difference of position is an internal tribal matter into which the federal courts cannot intrude. The fact that this is an internal tribal matter not subject to federal court intervention is another recognition of tribal sovereignty. If a tribe changes its position, that is for the tribe to decide.

*Different Horse*, 2011 WL 3422842, at \*4.

Here, just as in *Different Horse*, the record establishes that the federal action brought by Plaintiffs represents a difference of position than that of the tribal council. Plaintiffs here brought this action pursuant to perceived deficiencies in tribal procedure. As was found in *Different Horse*, however, federal courts are cautioned against, if not proscribed from, adjudicating issues that amount to internal Indian affairs. As discussed, Indian tribes, as sovereign, modern governments, are entitled to adjudicate contests between tribal members. Absent explicit Congressional mandate, Indian tribes retain inherent sovereign authority over its members. This federal action, as well as the tribal court action, appears to primarily involve tribal law and policy. Plaintiffs, as defendants in the tribal action, are alleged to have violated the tribal constitution. The tribal court is better situated to interpret the Tribe's own laws. While Plaintiffs allege a certain degree of inequity in the tribal proceedings, the allegations are not sufficient to convince this Court that the tribal court should not have a full opportunity to review its own jurisdiction and evidence presented. Ultimately, the record provides the Court with insufficient grounds for exercising jurisdiction. Plaintiffs have failed to prove that the contest involves anything other than internal issues that should be dealt with by any jurisdiction other than the tribal courts. Instead, the issues presented to the Court are of a type properly decided by the tribal courts. As a result, the Motion as to tribal Defendants Langdeau and McCauley is granted and the action against those Defendants is dismissed. Because the foregoing also resolves the entirety of Defendants' Motions, the Court need not undertake a Rule 12(b)(6) discussion.

## CONCLUSION

Due to Plaintiffs' inability to support the argument that the United States has waived its sovereign immunity under the APA, 28 U.S.C. § 1331, or 28 U.S.C. § 1367(a), the action cannot

11

move forward against the government Defendants at this time. In addition, both because Plaintiffs have not yet exhausted their available tribal remedies, including tribal appellate review, if any, and because this action is one centering primarily on internal tribal affairs, this federal action also cannot proceed against the remaining tribal Defendants at this time. Accordingly,

IT IS ORDERED that the Defendants' motions to dismiss under Rule 12(b)(1), Doc. 15 and 18, are granted and Plaintiffs' Complaint, Doc. 1, is dismissed without prejudice.

Dated this 25th day of January, 2016.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
By _____
        Deputy